# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE

Assigned on Briefs February 17, 2010

## DANIEL STEWART v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Marshall County**
**No. 2008-CR-120      Robert Crigler, Judge**

**No. M2009-00341-CCA-R3-PC - Filed November 19, 2010**

Petitioner, Daniel Stewart, entered open guilty pleas to two counts of Class C felony theft, one count of forgery, and one count of passing a worthless check, also Class C felonies, for which Petitioner was sentenced, following a sentencing hearing, as a Range I standard offender to six years confinement for each count, to be served concurrently. In this appeal from the court's denial of his post-conviction petition, Petitioner asserts that (1) he received ineffective assistance of counsel at trial; (2) his guilty plea was entered involuntarily; and (3) he received ineffective assistance of counsel regarding waiving his right to appeal he did not effectively waive his right to appeal. Finding no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, delivered the opinion of the Court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, (on appeal) and Donna Orr Hargrove, District Public Defender; Michael Collins, Assistant Public Defender; and William Harold, Assistant Public Defender, (at trial) for the appellant, Daniel Stewart.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## *Plea Hearing*

At a plea hearing on April 9, 2008, Petitioner entered open guilty pleas to the indicted offenses of two counts of theft of property in an amount over $10,000, one count of forgery, and one count of passing a worthless check. At the plea submission hearing, the Assistant District Attorney General gave the following information as a factual basis for the plea:

> May it please the Court, the witnesses are available in this case. This investigation was done by the Marshall County Ambulance Service and the Tennessee Bureau of Investigation. Were they called to the witness stand they would testify these events occurred in Marshall County, Tennessee on October 19th, 2007.
>
> Prior to that, the Marshall County Ambulance Service had a used ambulance for sale. Marshall County Ambulance Service being a part of the Marshall County government. They advertised that on a website or on the internet. I don't know how you say it. They advertised it. They advertised the ambulance for $49,950. The defendant started calling Jimmy Adams, who was head of the Marshall County Ambulance Service at the time; reached an agreement with him verbally over the telephone. And then in the early morning hours, like 2:00 or 3:00 or something in the morning, the defendant shows up and he has a check. He has the required letter of – not a letter of credit but a letter stating he has that much money in the bank.
>
> He presents all of this to the Marshall County Ambulance Service and he obtains a 2002 Ford E-350 ambulance and the equipment on the ambulance. The check again was $49,950 made on an account of Stewarts Electronics, which was an account owned by the defendant.
>
> The Marshall County Ambulance Service/Marshall County government attempted to cash the check. It was no good. Came back insufficient funds.
>
> Discussions went on with the defendant and Jimmy Adams for a period of time and Jimmy Adams agreed to pay an airline ticket for him to come back, to fly into Nashville to get this straightened out. When he came into Nashville, I had the TBI there waiting on him, along with Jimmy Adams, and they arrested him on charges that I had told them to arrest him for. During the conversation he had with the TBI and Mr. Adams, the defendant told Mr. Adams of the Marshall County Ambulance Service, that he had

-2-

given money for the ambulance and had taken it from Marshall County to a Richard Alley in Burlington, North Carolina, where Mr. Alley apparently for some type of ambulance service gave him a check for $17,000. Substantially less than what he bought it for here.

He wanted to know what would happen if he could pay the money back before the court date. He stated he had written a bad check before and he had three misdemeanors on his record. He asked what his bond amount was going to be and what kind of process it was to get out of jail. He stated that he put the $17,000 that he got for the ambulance in North Carolina into the bank and that somehow he changed banks and lost his money.

At the guilty plea hearing, the trial court examined Petitioner under oath as follows:

THE COURT:         Mr. Stewart, are you having any health problems today?

[PETITIONER]:      Not today.

THE COURT:         Are you taking any medicine?

[PETITIONER]:      Yes, sir.

THE COURT:         Are you taking any medicine that interferes with your ability to understand what you are doing?

[PETITIONER]:      No, sir.

THE COURT:         Okay. Have you taken any other kind of drugs besides medicine?

[PETITIONER]:      No, sir.

THE COURT:         Drank any alcohol?

[PETITIONER]:      No, sir.

Petitioner also testified that he had graduated from high school and could read and write. He was shown his signed plea petition and indicated that he had read and signed it and that he understood it. The trial court then went over Petitioner's trial rights, and Petitioner

-3-

indicated that he understood each of his rights. After the State offered the factual basis for the charges, the following transpired:

> THE COURT: Are you in fact guilty of these charges that you are offering to plead guilty to?
>
> [PETITIONER]: Yes, sir, I am guilty.
>
> THE COURT: Okay. Is what he said happened, is that what happened?
>
> [PETITIONER]: Yes, I am guilty. Yes, sir.

The trial court then explained to Petitioner the possible range of punishment for the charges and asked for Petitioner's plea to each charge, to which Petitioner responded "guilty." The trial court also examined Petitioner about the voluntariness of his plea.

> THE COURT: Are all four of those guilty pleas your free and voluntary decision?
>
> [PETITIONER]: Yes, Your Honor.
>
> THE COURT: Have you been promised anything other than you would get a sentencing hearing at a later time to get you to plead guilty?
>
> [PETITIONER]: No, sir.
>
> THE COURT: Have you been threatened in any way?
>
> [PETITIONER]: No, sir.

The trial court then asked Petitioner if he understood that by pleading guilty, he was waiving his right to a jury trial, and Petitioner responded that he did. The trial court further questioned Petitioner about his representation by counsel.

> THE COURT: Do you have any complaints about the way and manner in which the Public Defender's Office has represented you?

[PETITIONER]:        No, sir.

THE COURT:          Have you had any difficulty communicating with them
                    about your case?

[PETITIONER]:        No, sir.

THE COURT:          Have you been able to talk with them all that you want
                    to in order to decide to plead guilty today?

[PETITIONER]:        Yes, sir.

THE COURT:          Is there anything they could have done to research or
                    investigate the case that you can think of that they
                    have not done?

[PETITIONER]:        No, sir.

THE COURT:          Do you have any questions about anything that has
                    been said or done in court today?

[PETITIONER]:        No, sir.

The trial court found Petitioner competent to enter guilty pleas and further found that Petitioner knowingly and voluntarily entered his pleas.

*Sentencing Hearing*

Following a sentencing hearing on June 9, 2008, Petitioner was sentenced as a Range I offender to serve six years for each Class C felony conviction, with his sentences to run concurrently. At the conclusion of the sentencing hearing, the trial court advised Petitioner of his right to appeal his sentence. Counsel for Petitioner told the court that Petitioner had decided to waive appeal of his sentences after some discussion, and counsel stated that the decision to waive appeal "was initiated by" Petitioner. The trial court instructed that the waiver of appeal be reduced to writing. Thereafter, the following exchange was had between Petitioner and the court:

THE COURT:          I have been handed a document entitled Waiver of
                    Appeal. I am holding that up. Can you see it from the
                    distance we are apart?

-5-

[PETITIONER]:     Yes, sir, Your Honor.

THE COURT:        Did you sign that document?

[PETITIONER]:     Yes, sir, Your Honor.

THE COURT:        Did you read it in its entirety –

[PETITIONER]:     Yes, sir.

THE COURT:        – before you signed it?

[PETITIONER]:     Yes, sir, Your Honor.

THE COURT:        Do you understand you are entitled to this appeal and I have given you the Public Defender's office, I will give you the Public Defender's office to pursue the appeal?

[PETITIONER]:     Yes, sir, Your Honor.

THE COURT:        I imposed the maximum sentence, in my opinion. It is your decision as to whether or not you appeal that. Are you telling me you do not want to appeal?

[PETITIONER]:     Six years is the maximum sentence?

THE COURT:        You need to get your advice from the Public Defender's office.

            * * * *

THE COURT:        Sometimes people just want to take their medicine. Is that the category you fall into? You just want to serve this sentence because you feel like you deserve it? Is that what you are telling me?

[PETITIONER]:     Yes, sir, Your Honor.

THE COURT:        Do you have any questions about this?

-6-

| [PETITIONER]: | No, sir, Your Honor. |
|---|---|
| THE COURT: | Is this your free and voluntary decision? |
| [PETITIONER]: | Yes, sir, Your Honor. |
| THE COURT: | Has anybody promised you anything to get you to waive your appeal? |
| [PETITIONER]: | No, sir, Your Honor. |
| THE COURT: | Has anybody threatened you in any way? |
| [PETITIONER]: | No, sir, Your Honor. |
| THE COURT: | Very well. That seems to cover it pretty thoroughly. Do you have any questions here right now as you stand there? |
| [PETITIONER]: | No, sir, Your Honor. I just want to tell you that I am here. I committed a crime, so I am wanting to do my time for it. |

*Post-Conviction Hearing*

Petitioner filed a *pro se* petition for post-conviction relief. Counsel was subsequently appointed to represent Petitioner and an amended petition was filed. In the amended petition, Petitioner asserted that 1) his guilty plea was entered involuntarily and unknowingly because at the time of the guilty plea hearing, Petitioner was medicated to such a degree that he was substantially impaired and was unable to understand the nature and consequences of his plea, and 2) he received the ineffective assistance of counsel at the guilty plea hearing and at the sentencing hearing.

The trial court denied Petitioner's post-conviction petition following an evidentiary hearing. Petitioner testified that he was twenty-two years old and was serving a six-year sentence for his convictions in this case. Petitioner testified that his trial counsel met with him one time in the Marshall County Jail. In that meeting, counsel conveyed "an offer from the District Attorney for 12 years," which Petitioner did not accept. Petitioner testified that when counsel visited him at the jail, Petitioner was on suicide watch and was medicated at that time. In February 2008, Petitioner had attempted suicide in jail by swallowing a

disposable razor blade. Petitioner stated that he spent seven days in the Middle Tennessee Mental Health Institute. Petitioner testified that he was taking two medications, Haldol and Prozac, at the time he entered his pleas, but he does not recall the dosage.

According to Petitioner, the only other discussion he had with trial counsel was in court on the day of his plea hearing. Petitioner didn't recall having any discussions with counsel about the merits of his case or having a trial on the charges. Petitioner recalled that he requested by letter a copy of the discovery received from the State by the Public Defender's office before he entered his guilty pleas, but that he did not receive it until after his plea hearing. Petitioner did recall counsel reviewing some of the State's discovery response with him, but counsel advised him to "wait it out. . . [and] see what kind of offer we get." He testified that his counsel advised him that the State had "theories" and "it is not in your best interest to go to trial." On cross-examination, Petitioner admitted that he met with trial counsel "about six or seven" times. Petitioner testified that he told his trial counsel that he was "taking several different medications, [that he] was sick, [and] needed help." Petitioner claimed that counsel told him that "it was not important" that he was taking medication.

Petitioner's amended petition for post-conviction relief states that "[a]t the guilty plea hearing, Petitioner's counsel was aware that Petitioner was medicated and specifically directed Petitioner to not [sic] disclose to the trial court that he was taking any medications." Petitioner claimed that on the day of his plea hearing, trial counsel told him, "Well, those medications shouldn't affect you and just go up there, and the only thing you have got to do is plead open, and he will set you for a sentencing hearing. You will most likely get less time." When asked by the State what his trial counsel said to him when Petitioner claims he told him to lie to the court, Petitioner stated that counsel told him "not [to] tell the Court that you are on those medications because the Judge will not accept your plea when you are on medications." Petitioner testified that, at that time, he did not know the difference between the truth and a lie because of the medications he was taking. Petitioner claimed that "[he] didn't know what [he] was doing."

Petitioner also testified that prior to entering his guilty pleas, he met with a TBI investigator, who he claimed had proof that Petitioner had attempted to pay for the ambulance by wiring money to the Marshall County EMS service, which was later returned to him. Petitioner did not remember telling his trial counsel about this information.

Petitioner acknowledged that the trial court did advise him of his right to appeal his sentence and to have an attorney appointed to represent him in his appeal, but he asserted that his trial counsel told him, "[i]f you appeal it, we don't see where you are going to get no less

time. If any, you will get more time, so the best advice is not to appeal." Petitioner recalled signing a waiver of his right to appeal.

Gene Kote, a nurse at the Marshall County Jail, testified that Petitioner's medical file showed that in April 2008, he was taking Norvasc and Tenormin for high blood pressure; Prozac, "an anti-psychotic [sic]" (a cursory review of medical information indicates Prozac (Fluoxetine) is an anti-depressant); Dilantin for seizures; Acuvair, an inhaler for asthma; Trazodone, an anti-depressant; and Prilosec, "for the stomach." She testified that the dosage of Prozac was within a normal therapeutic range and was commonly administered at the jail.

Ms. Kote described Petitioner as "very uncooperative" and testified that "almost every day, there was a complaint of some sort..." She testified that Petitioner was put on "suicide watch" after he swallowed a razor. She further testified that she believed that Petitioner "thought that if he could put enough pressure on being suicidal and things like that, that they would just let him go."

Petitioner's trial counsel testified that he had been an assistant public defender since 1999. He had represented Petitioner since his case was in general sessions court. Counsel initially testified that there had been a preliminary hearing in Petitioner's case, but on cross-examination, he remembered that, in fact, Petitioner had waived his preliminary hearing. Counsel testified that he met with Petitioner at least seven or eight times with each meeting lasting an average of 15 to 20 minutes. Counsel recalled that he met with Petitioner twice in general sessions court, once in jail, and "approximately five times" in circuit court. Counsel testified that he discussed with Petitioner the facts of the case, reviewed the State's discovery response with him, conveyed to Petitioner the State's initial plea offer of six years on two counts to be served consecutively, and advised him of his options, which included attempting to negotiate a plea agreement with a lesser sentence, entering an open guilty plea and allowing the court to sentence him, or taking the case to trial. Counsel testified that, while he did review the State's discovery response with Petitioner prior to Petitioner entering his pleas, he did recall that his office received a letter from Petitioner requesting a copy of discovery and he testified that it was mailed to Petitioner after his pleas were entered. Petitioner told counsel about the facts surrounding the case and about Petitioner having obtained the ambulance and having presented a check with insufficient funds to pay for it. Counsel denied that Petitioner ever told him that he had attempted to pay for the ambulance.

Counsel was aware that Petitioner was taking medications, though he did not know exactly which medications, and that Petitioner had attempted suicide in jail and had been hospitalized at Middle Tennessee Mental Health Institute. Counsel further testified that, in all of his discussions with Petitioner, Petitioner appeared "quite lucid" and that "it didn't

appear it was affecting his thinking in any way." To him, Petitioner appeared "brighter than the average criminal defendant." On the day that Petitioner entered his pleas, counsel had attempted to negotiate a lower sentence with the State, but the State had refused. Counsel explained to Petitioner that he "thought there was a good chance of getting concurrent sentencing if we had an open plea and let the Judge sentence him at a sentencing hearing." Counsel also advised Petitioner of his right to a trial by jury. Counsel testified that Petitioner appeared to understand his options, and he chose to enter an open plea. Counsel denied having directed Petitioner to lie to the court about whether he was taking any medications. Counsel also denied having advised Petitioner to waive his right to appeal, explaining that he told Petitioner "that [he] thought that the likelihood of getting anything less on appeal was extremely low based on his [criminal] record. . ." Counsel admitted that it was possible that he advised Petitioner that his effective sentence could increase after an appeal if, on appeal, the appellate court remanded the case for resentencing and Petitioner's sentences were subsequently ordered to be run consecutively. Finally, counsel testified that he "very well might have told [Petitioner] it was not in his best interest to go to trial, because it wasn't."

In its order denying post-conviction relief, the post-conviction court found that Petitioner "freely, voluntarily and knowingly waived his right to appeal." The court further found that:

> Petitioner's appearance, demeanor and level of understanding when he waived his appeal was no different then [sic] than when he pleaded guilty. At neither time did he express, indicate or exhibit any inappropriate responses or difficulty in any respect in understanding the proceedings or what he was doing and saying. The Court finds that he [sic] medication he was taking was non-narcotic, within therapeutic levels and had no bearing on the Petitioner's ability to freely, voluntarily and intelligently plead guilty and waive his appeal.

The post-conviction court also found that Petitioner was not credible in his testimony that his counsel had "advised him to lie at the plea acceptance hearing about his medication and its affects." The court noted that Petitioner had testified at the plea hearing that the medicine he was taking did not interfere with his ability to understand the nature and consequences of his plea. The post-conviction court also found that Petitioner's counsel at trial was competent, having discussed with him the State's discovery and conferred adequately with Petitioner about the charges pending against him and the options available both before his guilty pleas and his waiver of appeal.

-10-

*Analysis*

On appeal, Petitioner asserts that his trial counsel was ineffective in that counsel's meetings with Petitioner were insufficient, depriving Petitioner of the opportunity to meaningfully confer with counsel about his case. Petitioner further avers that counsel "effectively never inquired" about the medications that Petitioner was taking, and that he did not adequately convey to Petitioner his right to have a trial on the charges.

In a claim for post-conviction relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103. Petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). The post-conviction court's factual findings "are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Upon review, this court will not reweigh or reevaluate the evidence below, and all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial court, not this court. *Momon v. State*, 18 S.W.3d 152,156 (Tenn. 1999).

On appeal, the post-conviction court's findings of fact are entitled to substantial deference and are given the weight of a jury verdict. They are conclusive unless the evidence preponderates against them. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). A post-conviction court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001). Our supreme court has "determined that the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact, . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief based on the alleged ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient, and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance

of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of Strickland, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn.Crim.App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and the State standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowing guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make

sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904.

In the present case, Petitioner has failed to show that trial counsel was deficient, that Petitioner was prejudiced by counsel's alleged deficiencies, or that but for counsel's alleged deficiencies, Petitioner would have refused to plead guilty and insisted on going to trial. The record shows that counsel met with Petitioner at least seven or eight times prior to the plea and reviewed the State's discovery with him, including Petitioner's confession to having passed a bad check for the ambulance and submitting a forged letter of credit. Petitioner's trial counsel was aware of his client's medications and his suicide attempt and subsequent hospitalization. Counsel nevertheless believed, based on his discussions with Petitioner and Petitioner's exhibited behavior and intelligence, that Petitioner understood the weight of the evidence against him and the nature and consequences of his decision to plead guilty. Counsel testified that in all of his discussions with Petitioner, both before and after Petitioner's suicide attempt and hospitalization, that Petitioner did not reveal any indication that his mental state was impaired. Counsel denied ever having told Petitioner to lie to the court about his medications and their potential effect on him. In fact, in response to the court's questioning, Petitioner answered that he was taking medications, but none that interfered with his ability to understand what he was doing.

Counsel explained Petitioner's options to him, which included negotiating a plea agreement with the State, entering an open plea and allowing the trial court to sentence him, or taking the case to trial. In counsel's opinion, the weight of the evidence against Petitioner made a trial an unfavorable option. Counsel also explained Petitioner's risk of receiving consecutive sentencing based on his criminal history, which included other thefts and worthless checks.

The trial court accredited the testimony of trial counsel and discredited the testimony of Petitioner. Furthermore, the transcript of the guilty plea hearing is in direct opposition to Petitioner's claims. The transcript of the guilty plea hearing shows that the trial court thoroughly advised Petitioner of his rights and questioned Petitioner about his understanding of those rights, and Petitioner responded appropriately to the court's examination. There is nothing in the record to indicate that Petitioner was incapable, by virtue of his mental state, of understanding the nature and consequeces of his decision to enter guilty pleas. At the conclusion of the guilty plea hearing, and after the court accepted Petitioner's waiver of appeal, Petitioner expressed his satisfaction with the outcome of his case, stating to the court, "I committed a crime, so I am wanting to do my time for it."

Petitioner has failed to show by clear and convincing evidence that he received ineffective assistance of counsel or that this guilty pleas were involuntarily or unknowingly entered. Petitioner is not entitled to relief.

Finally, Petitioner asserts that he should be granted a delayed appeal due to counsel's ineffective representation regarding the waiver of his right to appeal. Following Petitioner's sentencing hearing, the trial court advised Petitioner of his right to appeal and appointed counsel to represent him on appeal. Petitioner then initiated a discussion with counsel regarding an appeal, and Petitioner informed counsel that he wished to waive his right to appeal. Counsel testified at the post-conviction hearing that his advice to Petitioner was that he would be unlikely to receive a lesser sentence on appeal and that the possibility existed that he could even receive a higher sentence, in the form of consecutive sentencing. Petitioner asserts in his brief that counsel was deficient in advising him that in a direct appeal to this Court, Petitioner could receive a greater effective sentence if this Court ordered his concurrent six-year sentences to run consecutively. Petitioner argues that counsel's advice was erroneous in that this is not a case in which mandatory consecutive sentencing applies. Petitioner contends that but for counsel's erroneous advice, he would not have waived his right to appeal his sentence. The record, however, does not support Petitioner's contention that counsel gave him erroneous advice. At the sentencing hearing, the trial court declined to impose consecutive sentencing and ordered that Petitioner's sentences run concurrently. The trial court further recognized that mandatory consecutive sentencing did not apply in this case. However, Petitioner was on probation at the time of the offenses in this case. Arguably, then, he was at risk of potentially having his sentences ordered to be served consecutively if the State raised this issue in an appeal by Petitioner. *See State v. Russell*, 800 S.W.2d 169, 171-72 (Tenn. 1990) (State may properly assign a sentencing issue on appeal in its responsive brief); Tenn. Code Ann. § 40-35-115(b)(6) (consecutive sentencing may be imposed where offenses were committed by a defendant while on probation). We conclude that counsel's advice regarding Petitioner's risk of receiving a greater sentence on appeal was not erroneous, and therefore, counsel's performance was not deficient.

Furthermore, we conclude that Petitioner voluntarily waived his right to an appeal in this case. The trial court carefully examined Petitioner regarding his wish to waive an appeal, and the court accepted a written waiver of appeal from Petitioner. Finally, Petitioner expressed his satisfaction with the outcome of his case. This issue is without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____

THOMAS T. WOODALL, JUDGE

-14-